# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

MALLORIE M.,

                                        Plaintiff,

        v.                                                  3:21-CV-891
                                                            (MAD/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
TIMOTHY SEAN BOLEN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for Report and Recommendation by the
Honorable Mae A. D'Agostino, United States District Court Judge, pursuant to 28
U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with
General Order 18.

## I.   PROCEDURAL HISTORY

On January 17, 2018, plaintiff protectively filed an application for Supplemental
Security Income ("SSI") benefits, alleging disability beginning August 5, 2014.
(Administrative Transcript ("T") 254-59. Plaintiff's application was denied initially
on May 3, 2018. (T. 105-110). Administrative Law Judge ("ALJ") Laureen Penn
granted plaintiff's request for a hearing, but adjourned the proceeding on February 19,
2020 to allow plaintiff further opportunity to secure representation. (T. 33-44). On
June 23, 2020, plaintiff appeared telephonically with counsel before a new ALJ,

Stanley Chin.[1] (T. 45-73). The ALJ heard testimony from plaintiff and vocational expert ("VE") Martina Henderson. (T. 49-72). On July 1, 2020, the ALJ issued a decision denying plaintiff's claim. (T. 83-104). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 4, 2021. (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking Disability Insurance Benefits or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

---

[1] All further references to "the ALJ" herein will refer to ALJ Chin.

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was twenty-eight years old on the date of her second administrative hearing. (T. 45, 254).  While a student, she had problems with regular attendance, and attended special education classes for at least a portion of high school due to an "emotional disability" before obtaining her GED. (T. 270-78, 435).  At the time of her hearing, she resided alone but had lived with a caregiver as recently as February 2020. (T. 955).  This individual assisted plaintiff with making appointments, taking medication, and performing basic household tasks. (T. 58, 62, 955).  Plaintiff testified that she was in the process of looking for another caregiver. (*Id.*)

4

Plaintiff has not worked since 2008, with her limited work history including short-term positions as a cashier at an office supply store and a member of the groundskeeping staff at a local hotel. (T. 49, 318). She testified that she left both of these positions due to her inability to handle the stress of interacting with customers and responding to supervisor requests. (T. 49-54). She attributed these difficulties to her diagnosed anxiety, depression, post-traumatic stress disorder ("PTSD") and bipolar disorder. (T. 55).

To address her mental health impairments, plaintiff attended weekly therapy sessions with a counselor and met with her psychiatrist about every six weeks for therapy and medication management. (T. 55, 515, 951). Plaintiff testified that her depression and other mental health impairments left her feeling mentally and physically drained, so that she could "hardly get out of bed" the majority of the typical week. (T. 58). She further testified that her anxiety made her tense and prone to outbursts when dealing with stressful situations involving other people. (T. 59). During those episodes, she typically tried to remove herself from others and relied upon her dogs to calm her down and help her regain her composure. (T. 59-61).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 92-96). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.    THE ALJ'S DECISION

After reviewing the procedural history of plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful

activity since her application date of January 17, 2018. (T. 88). At step two of the

sequential evaluation, the ALJ found that plaintiff had the following severe

impairments: bipolar disorder; PTSD; anxiety disorder; and obesity. (T. 88-89). At step

three, the ALJ found that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a Listed Impairment. (T. 89-

91).

At step four, the ALJ found that plaintiff had the RFC to perform less than the

full range of light work, as defined in 20 C.F.R. §§ 416.967(b). (T. 91-97).

Specifically, he found that plaintiff could

> lift and carry up to 20 pounds occasionally and 10 pounds frequently;
> stand and walk for about six hours and sit for six hours in an eight hour
> day, with normal breaks; the claimant is limited to simple and repetitive
> tasks in a routine work setting; the claimant is limited to superficial contact
> with the public and cannot provide direct customer service interaction, but
> [sic] work in proximity to the public; and she can have only occasional
> interaction with co-workers and supervisors.

(T. 91).

In making the RFC determination, the ALJ stated that he considered all of

plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence, based

on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p.

(*Id*.) The ALJ further stated that he considered opinion evidence and prior

administrative medical findings pursuant to 20 C.F.R. § 416.920c. (*Id*.) The ALJ also

found that plaintiff's medically determinable impairments could reasonably be expected

to cause her alleged symptoms, but that plaintiff's statements regarding the intensity,

persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 92).

Next, the ALJ evaluated the VE testimony and found that plaintiff was unable to perform any past relevant work. (T. 97). Relying on the VE's identification of representative occupations that an individual with plaintiff's RFC could perform, the ALJ found that there were other jobs existing in significant numbers in the national economy that plaintiff could also perform. (T. 97-98). Accordingly, the ALJ determined that plaintiff was not disabled at any time between her application date of January 17, 2018 through the date of his decision. (T. 98).

## V.    **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ erred in his RFC determination by failing to properly evaluate the medical opinions addressing plaintiff's mental health impairments. (Plaintiff's Brief ("Pl.'s Br.") at 8-25) (Dkt. No. 16). Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-19) (Dkt. No. 20). For the reasons stated below, this court agrees with plaintiff that the ALJ erred in assessing the supportability and consistency of the medical opinion evidence. As a result, the ALJ's ultimate finding that plaintiff was not disabled was tainted. Therefore, this court recommends that the district court remand for further administrative proceedings by the Commissioner to properly evaluate the medical opinions and other record evidence, in order to reach a disability determination that is supported by substantial evidence.

DISCUSSION

## VI.    <u>RFC/EVALUATING MEDICAL EVIDENCE</u>

### A.    **Legal Standards**

#### 1.    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements

8

regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical

sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with

the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.   Summary of Medical Opinion Evidence

In this case, the ALJ considered both treating source and consulting opinions related to plaintiff's functional limitations. Plaintiff has only challenged the ALJ's evaluation of the mental health opinions. A summary of the relevant opinion evidence and the ALJ's findings are set out below.

### 1.   Dr. Brian Babiak

Dr. Babiak had been plaintiff's treating psychiatrist since June 2018, seeing her approximately every six weeks and managing her psychiatric medication. (T. 55, 515). The record contains three separate opinions from Dr. Babiak addressing plaintiff's mental health functional limitations. (T. 801-806, 1012-15).

### a.   September 2018 Opinion

On September 12, 2018, Dr. Babiak performed a psychiatric examination of plaintiff and completed an opinion form issued by the New York State Office of Temporary and Disability Assistance entitled "Medical Examination for Employment Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination." (T. 1012-13). He identified plaintiff's mental health impairments as bipolar disorder, PTSD, and attention deficit hyperactivity disorder. (T. 1012).

Utilizing a check-box form to identify functional limitations, Dr. Babiak opined that plaintiff was "very limited" in a number of areas: understanding, remembering, and

11

carrying out instructions; maintaining attention and concentration; making simple decisions; interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavioral extremes, maintaining basic standards of personal hygiene and grooming; and functioning in a work setting at a consistent pace. (T. 1013).  Although the form allowed minimal narrative, Dr. Babiak noted that plaintiff had "poor understanding," "suicidal thoughts," and "mood swings." (*Id.*)

The ALJ found Dr. Babiak's September 2018 opinion to have "limited persuasiveness."  (T. 95).  He discounted the opinion on several grounds.  First, the ALJ noted that the opinion was "simply a checklist form" that did not provide any objective findings to support it. (T. 95).  Next, the ALJ described the opinion as "inconsistent with the treatment notes showing generally normal cognition." (*Id.*).  The ALJ contrasted Dr. Babiak's opinion that plaintiff was very limited in interacting with others with record evidence that plaintiff "generally interacted normally with medical professionals." (*Id.*)  The ALJ also cited "generally normal consultative examination findings" showing intact attention and concentration, the ability to perform simple calculations and counting exercises, intact memory, adequate insight and judgment, and "low average" intellectual functioning. (T. 95).

### b.    February 2019 Opinion

On February 20, 2019, Dr. Babiak completed a Psychiatric Functional Asssessment. (T. 801-806).  This check-box form set out his opinion across a number of functional areas: Understanding, Remembering or Applying Information; Interacting with Others; Concentration, Persistence or Maintaining Pace; and Adapting or

Managing Oneself. (T. 802-806).

With regard to understanding, remembering, or applying information, Dr. Babiak opined that plaintiff had "marked or serious" limitations in recognizing a mistake and correcting it and performing a sequence of multi-step activities. (T. 802). He opined that plaintiff had "extreme" limitations or an "inability to function" across the remaining areas listed on the form: understanding and learning terms, instructions, and procedures; describing work activity to someone else; asking simple questions or requesting assistance; answering questions and providing explanations; identifying and solving problems; using reason and judgment to make work-related decisions; remembering locations and work-like procedures; understanding and remembering short and simple instructions; and carying out very short and simple oral instructions. (*Id.*)

With regard to interacting with others, Dr. Babiak opined that plaintiff had "moderate" limitations in her ability to state her own point of view, and "marked or serious" limitations in several others areas: initiating or sustaining conversation; responding appropriately to requests, suggestions, criticism, and challenges from co-workers or supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (T. 803). He also opined that plaintiff had "extreme" limitations or an "inability to function" with regard to understanding and responding to social cues; cooperating and handling conflict with others; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (*Id.*)

13

With regard to concentration, persistence, or maintaining pace, Dr. Babiak opined that plaintiff had "marked or serious" limitations in several areas: ignoring or avoiding distractions while working; sustaining an ordinary routine without special supervision; and staying on task. (*Id.*)  He further opined that plaintiff had "extreme" limitations or an "inability to function" in all other areas listed on the form: initiating and performing a task she understands and knows how to do; completing tasks in a timely manner; maintaining attention for a two-hour segment; performing at a consistent pace without interruption from symptoms or an unreasonable number and length of breaks; and working in coordination with or proximity to others without being unduly distracted. (*Id.*)

With regard to adapting or managing oneself, Dr. Babiak opined that plaintiff had "marked or serious" limitations in her ability to make plans independently of others and to maintain personal hygiene and attire appropriate to work. (T. 804)  He also opined that plaintiff had "extreme" limitations or an "inability to function" in numerous areas: the ability to change activities or work settings without being disruptive; distinguishing between acceptable and unacceptable work performance; setting realistic goals; responding to demands; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (*Id.*)  In Dr. Babiak's opinion, plaintiff was likely to be absent from work more than four days per month, and was also likely to be late to work more than four days per month. (T. 804)  He described her psychiatric symptoms as "intermittent or marked by fluctuations," but described plaintiff as compliant with prescribed treatment. (T. 806).

14

The ALJ found Dr. Babiak's February 20, 2019 opinion to have "limited persuasiveness." (T. 95). He discounted this opinion on similar grounds as the treating psychiatrist's September 2018 opinion. The ALJ found the opinion to be "inconsistent with the treatment notes showing generally normal cognition," and found its description of marked and extreme limitations to be unsupported by the record. (*Id.*). As before, the ALJ contrasted Dr. Babiak's opinion that plaintiff had marked to extreme limitations with regard to social interaction with record evidence that plaintiff "generally interacted normally with medical professionals." (*Id.*) The ALJ again cited "generally normal consultative examination findings" showing intact attention and concentration, the ability to perform simple calculations and counting exercises, intact memory, adequate insight and judgment, and "low average" intellectual functioning. (*Id.*) Finally, the ALJ found no supporting evidence for Dr. Babiak's opinion that plaintiff was likely to miss more than four workdays per month due to her impairments. (*Id.*)

### c.    October 2019 Opinion

The final opinion from Dr. Babiak in the record is dated October 18, 2019. (T. 1014-15). At the time of the opinion, Dr. Babiak had been seeing plaintiff on an outpatient basis for sixteen months. (T. 1015). Dr. Babiak indicated that he had recently examined plaintiff, and listed her diagnoses as bipolar disorder and anxiety. (*Id.*) Specifically addressing plaintiff's bipolar disorder, Dr. Babiak labeled her prognosis as "poor." (T. 1014).

Completing a check-box form of functional limitations, Dr. Babiak opined that plaintiff was "moderately limited" in her ability to maintain basic standards of personal

hygiene and grooming. (T. 1015).  He described plaintiff as "very limited" in all other areas listed on the form: understanding, remembering, and carrying out instructions; maintaining attention and concentration; making simple decisions; interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavioral extremes; and functioning in a work setting at a consistent pace. (*Id.*)

Although the ALJ did not identify Dr. Babiak as the author of this opinion, he provided similar reasons for assigning it "limited persuasiveness," and labeled it "vague as to [plaintiff's] specific functional limitations." (T. 94).  The ALJ noted that the opinion did not provide a detailed rationale or reference specific supporting evidence, and consisted solely of a check-box form. (T. 94-95).  Again, the ALJ contrasted the opinion's findings with "the generally normal consultative examination findings" and plaintiff's activities of daily living. (T. 95)

## 2.    Nurse Practitioner Tracey Cranston

Nurse Practitioner[2] ("NP") Tracey Cranston prepared a medical opinion of plaintiff's psychiatric functional limitations on March 6, 2017. (T. 1008-09).  At the time of the opinion, NP Cranston had provided psychiatric treatment and medication management to plaintiff on a regular basis since February 2017, but her treatment relationship dated back to at least February 2014. (T. 540-41, 981-82).

NP Cranston identified plaintiff's mental health impairments as depressive

---

[2] As a licensed nurse practitioner providing a mental health opinion, NP Cranston was an acceptable medical source for claims filed on or after March 27, 2017.  20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7); *see also Chad A.D. v. Comm'r of Soc. Sec.*, No. 8:21-CV-325 (GTS), 2022 WL 3153996, at *6 (N.D.N.Y. August 8, 2022).

disorder and impulse control disorder. (T. 1008). She opined plaintiff had moderate limitations in her ability to understand, remember, and carry out instructions, interact appropriately with others, and maintain socially appropriate behavior. (T. 1009). In her opinion, plaintiff could not work in "moderate to high stress" conditions or in a position where she would be working with the general public. (*Id.*)

The ALJ found this opinion to have "limited persuasiveness," due to its vagueness in describing plaintiff's specific functional limitations. (T. 96). The ALJ also noted that the opinion was made on a check-box form, and did not provide a detailed rationale or reference specific supporting evidence for its conclusions. (*Id.*) Finally, the ALJ found NP Cranston's opinion to be inconsistent with the "generally normal" consultative examination findings and plaintiff's activities of daily living. (*Id.*)

### 3.    Licensed Mental Health Counselor Garin Danner

Plaintiff attended counseling sessions with Licensed Mental Health Counselor[3] ("LMHC") Garin Danner since March 2019. (T. 951, 1059). LMHC Danner prepared a mental health opinions for plaintiff dated February 12, 2020 and a more detailed "Summary of Treatment" dated June 17, 2020. (T. 951-56, 1059-60).

### a.    February 2020 Opinion

In his February 12, 2020 opinion, LMHC Danner identified plaintiff's mental

---

[3] As a licensed mental health counselor providing a mental health opinion, LMHC Danner is "an individual who is licensed as a healthcare worker by a state working within the scope of practice permitted by State or Federal law," and the ALJ had to consider the persuasiveness of his opinion consistent with the requirements of 20 C.F.R. § 416.920c. *See* 20 C.F.R. § 416.902(i); *David F. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6822 (LJV), 2022 WL 10510389, at *2 fn. 6 (W.D.N.Y. October 18, 2022) (collecting cases).

health diagnoses as bipolar disorder and PTSD, with symptoms including difficulty with family relationships and other relationships, difficulty negotiating conflicts, and problems managing stress. (T. 951). He opined that plaintiff can "shutdown" when her stress level is high. (*Id.*) Overall, he gave plaintiff a good prognosis but cautioned that her ability to work may be impacted by a need to attend therapy sessions during the day. (*Id.*) LMHC Danner utilized a check-box form to address plaintiff's functional limitations in several areas: understanding, remembering, or applying information; interacting with others; concentration, persistence or maintaining pace; and adapting or managing oneself. (T. 952-54).

With regard to understanding, remembering, or applying information, LHMC Danner opined that plaintiff had "extreme limitations" in her ability to recognize a mistake and correct it; to identify and solve problems; to perform a sequence of multi-step activities; and cope with work-related stress. (T. 952). He further opined plaintiff had "marked or serious" limitations in her ability to understand and learn terms, instructions, and procedures; to answer questions and provide explanations; to use reason and judgment to make work-related decisions; to remember locations and work-like procedures; and to carry out very short and simple oral instructions. (*Id.*) He also opined that plaintiff had "moderate" limitations in her ability to describe work activity to someone else, ask simple questions or request assistance, and understand and remember short and simple instructions. (*Id.*)

In the area of social interaction, LMHC Danner opined that plaintiff had at least "extreme" limitations in her ability to understand and respond to social cues; to respond

18

appropriately to requests, suggestions, criticism, correction and challenges from co-workers or supervisors; to cooperate and handle conflict with others, and to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (T. 953). He further opined that plaintiff had "marked" limitations in initiating or sustaining a conversation and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (*Id.*)

With regard to concentration, persistence, and pace, LMHC Danner opined that plaintiff had at least extreme limitations in her ability to complete tasks in a timely manner; maintain attention for a two-hour segment; sustain an ordinary routine without special supervision; and perform at a consistent pace without interruption from symptoms or an unreasonable number and length of breaks. (*Id.*) He further opined that plaintiff had "marked or serious" limitations in her ability to ignore or avoid distractions while working; to work in coordination with or in proximity to others without being unduly distracted; and to stay on task. (*Id.*)

In the area of adapting or managing oneself, LHMC Danner opined that plaintiff had at least extreme limitations in her ability to change activities or work settings without being disruptive; to respond to demands; to respond appropriately to changes in a routine work setting; and to deal with normal work stress. (T. 954). He also opined that plaintiff had "marked or serious" limitations in her ability to manage psychologically-based symptoms; distinguish between acceptable and unacceptable work performance; and make plans independently of others. (*Id.*) He further opined that plaintiff had moderate limitations in her ability to set realistic goals, maintain

personal hygiene and proper attire at work, and be aware of normal hazards and take appropriate precautions. (T. 954).

In LMHC Danner's opinion, plaintiff was likely to be absent from work more than four days per month, and likely to be late to work another four days per month. (*Id*.)  He also opined that plaintiff had "minimal capacity" to adapt to changes in her environment or increased mental or stress-related demands. (T. 955).  In a brief narrative section, he noted that plaintiff had a live-in caregiver at the time who assisted her with activities of daily living by reminding her of medical appointments and daily medication, assisting with shopping, and helping plan meals. (*Id*.)  He also opined that physical impairments such as lack of sleep, fatigue, reduced lung capacity, and pulmonary issues exacerbated plaintiff's psychiatric impairments. (*Id.*)

The ALJ found LHMC Danner's February 2020 opinion to have "limited persuasiveness," finding it inconsistent with treatment notes showing "generally normal cognition" and the "generally normal consultative examination findings." (T. 94).  The ALJ specifically discounted the counselor's opinion regarding social interaction, because plaintiff "generally interacted normally with medical professionals." (T. 94, 975).

### b.   June 2020 Opinion

On June 17, 2020, LMHC Danner prepared a "Summary of Treatment" that included more detailed opinions regarding plaintiff's psychiatric impairments. (T. 1059-60).  He noted plaintiff's diagnosis of bipolar disorder, and found it consistent with his observations of her behavior. (T. 1059).  He described plaintiff as "prone to

negative thinking when she is in a depressive episode," and "becoming excessively excitable when she is experiencing a manic episode." (*Id.*)  In his opinion, plaintiff was "prone to emotional volatility and impulsivity, which severely impacts her relationships." (*Id.*)

With regard to workplace interaction, LMHC Danner opined that plaintiff's "impulsive 'fits' would most certainly lead to disharmony with co-workers and supervisors, as well as negatively impacting her [interactions] with customers in a workplace environment, and most likely lead to her being terminated in short order." (*Id.*)  He also opined that plaintiff's "ability to manage her activities of daily living is certainly stretched thin," giving as an example plaintiff being "unable to make [therapy sessions] because she cannot keep track of time or effectively coordinate appointments." (T. 1060).

The ALJ found this supplemental opinion from LMHC Danner to have "limited persuasiveness." (T. 94).  He again found the opinion inconsistent with the longitudinal medical record, including consultative examination findings of intact attention and concentration, intact memory, low average intellectual functioning, and adequate insight and judgment. (T. 94, 436-37).  The ALJ also cited treatment notes from February 2020 showing normal mood and affect, normal speech, and normal behavior. (T. 94, 974).  Finally, the ALJ found the therapist's summary inconsistent with plaintiff's reported activities of daily living. (T. 94, 437).

### 4.    Consultative Psychiatric Examiner Dr. Christine Ransom

Dr. Christine Ransom performed a consultative psychiatric examination of

21

plaintiff on April 7, 2018.  (T. 435-38).  Prior to the examination, plaintiff reported difficulty getting along with people, but "denied ongoing clinical-level depression, generalized anxiety, panic attacks, manic symptom, thought disorder, cognitive symptoms and deficits, suicidal and homicidal ideation, [or] phobic and trauma responses." (T. 435-36).  She reported being able to cook and prepare food, do cleaning, laundry, and shopping, socialize at a job training center, and train her dog at least once per week.[4] (T. 437).

During the single examination by Dr. Ransom, plaintiff demonstrated a cooperative and "socially appropriate" demeanor. (T. 436)  She showed a coherent and goal-directed thought process with no evidence of hallucinations, delusions, or paranoia. (*Id*.)  She displayed a "neutral" mood and intact attention and concentration. (T. 436).  Her insight and judgment were "adequate," her intellectual functioning was in the "low-average range," and her general fund of information was appropriate. (T. 437).

Based on her examination, Dr. Ransom opined that plaintiff had "mild episodic difficulty understanding, remembering and applying complex directions and instructions, regulating emotions, controlling behavior and maintaining well-being." (T. 437).  She found no evidence of difficulty understanding, remembering, and applying simple directions and instructions, using reasoning and judgment to make work-related decisions, interacting adequately with supervisors, coworkers and the public, sustaining concetration to perform a task at a consistent pace, sustaining an ordinary routine and

---

[4] It is unclear from the record whether plaintiff was taking her dog to formal training classes or doing training exercises with her dog on her own. (T. 56, 437, 996).

regular attendance at work, maintaining personal hygiene and appropriate attire and being aware of normal hazards and taking precautions. (*Id*.)  In Dr. Ransom's opinion, plaintiff exhibited a "mild psychiatric condition that will not significantly interfere with [her] ability to function on a daily basis." (*Id*.)

The ALJ found Dr. Ransom's decision to be "partially persuasive," in light of the consultative examiner's program knowledge, her performance of an in-person examination, and the opinion's generally consistency with those examination findings. (T. 96).  However, the ALJ discounted the opinion because it was based on a "snapshot" of plaintiff's functioning, and other record evidence, unavailable to Dr. Ransom, supported a greater degree of psychiatric limitations. (*Id.*)

### 5.    State Agency Psychiatric Consultant Dr. M. Momot-Baker

On May 2, 2018, Dr. M. Momot-Baker, a state agency psychological consultant, reviewed plaintiff's then-current medical records and found no evidence of severe mental impairments. (T. 79-80).  In explaining this determination, Dr. Momot-Baker noted that plaintiff had no recent psychiatric hospitalizations, no outpatient treatment records after December 2017, and was independent in her activities of daily living. (*Id.*) The consultant also noted plaintiff's "unremarkable" consultative examination results and Dr. Ransom's opinion that psychiatric limitations would not significantly interfere with plaintiff's ability to function. (T. 80).

The ALJ found Dr. Momot-Baker's opinion to have limited persuasiveness. (T. 95).  He noted the state agency consultant's program knowledge and the explanation for his decision, but found the opinion that plaintiff had no severe mental health

impairments inconsistent with the longitudinal record, much of which was not available when the opinion was issued. (T. 78, 95).

### C.    Application

Plaintiff contends that the ALJ failed to properly evaluate the persuasiveness of the multiple treating source medical opinions in the record, particulary where all described a similar variety of extreme or marked mental health limitations. (Pl. Br. at 8-27).  This court agrees, and recommends a remand for further administrative proceedings to evaluate the medical opinion evidence in a manner consistent with the applicable regulations.  Although the ALJ considered each of the treating source opinions individually, he never addressed the general consistency between each of the treating sources' description of extreme or marked limitations.  Instead, the ALJ recited almost identical reasons for finding each treating source opinion to have limited persuasiveness, and thus repeated the same analytical errors for each.

For example, the ALJ found the opinions of Dr. Babiak and NP Cranston to be unpersuasive because the opinions were completed on a check-box form. (T. 94-95). The Second Circuit recently clarified that an opinion by a treating provider should not be discounted solely because it is provided on a check-box form.  *See Kimberly W. v. Kijakazi*, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *4 (N.D.N.Y. Feb. 24, 2022) (citing *Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir. 2022)).  Rather, "the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue – not its form – and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert[.]"  *Colgan*, 22 F. 4th

24

at 361.

The ALJ's analysis fails to meet the standard set out in *Colgan*, because his review of the consistency of the treating source opinions with the broader record was so narrowly circumscribed. For example, the ALJ discounted the persuasiveness of the opinions from Dr. Babiak, Cranston, and Donner because he deemed them inconsistent with treatment and consultative examination notes showing "normal" mental health results. (T. 94-95). However, the primary record evidence cited by the ALJ are February 2020 treatment notes from a primary care physician when plaintiff sought to establish care for her physical impairments, and the reported results for the April 2018 psychiatric consultative examination. (T. 94-96, 435-438, 972-75). This analysis overlooks other record evidence reviewed by the ALJ, including March 2017 treatment notes from NP Cranston describing plaintiff as "dysphoric" and "tearful," and "unable to articulate her emotions " and treatment notes from another provider in the same practice describing plaintiff as tearful, with a dysphoric mood and terse speech in September 2017, October 2017, and April 2018. (T. 92, 984, 987, 990, 996). During this same period, plaintiff reported difficulty trusting her medical providers, was non-compliant with medication, and frequently missed scheduled appointments. (T. 987-89, 993).

The Second Circuit has "powerfully" warned that "an ALJ commits legal error in resting his disability determination on 'a one-time snapshot of a claimant's status' because that episode 'may not be indicative of her longitudinal mental health.'" *Colgan*, 22 F.4th at 362 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

"Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). Such concerns are particularly cogent here, where both treating and consultative sources describe the episodic nature of plaintiff's mental health impairments. (T. 437, 1059). *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (remanding where "ALJ focused on the fact that [plaintiff's] mental status examinations were largely normal. These examinations, however, analyze the patient's mental state only at the time of the examination and do not consider symptoms the patient may experience outside of that brief period of time."); *Jesse R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1220 (CFH), 2022 WL 813918, at *10 (N.D.N.Y. March 17, 2022) (noting that treating provider assessments are often more probative than consultative examination findings where plaintiff's symptoms are expected to wax and wane over time and would likely be aggravated if individual was exposed to the stress of "competitive, remunerative work on a consistent basis."). Indeed, the ALJ recognized this in his decision, when he discounted Dr. Ransom's consultative opinion as based on a mere "snapshot" of plaintiff's mental functioning. (T. 96).

The ALJ commits a similar error in discounting the treating source opinions based upon plaintiff's perceived easy social interaction with medical providers. (T. 94-95, 975). Even setting aside the documented instances where plaintiff missed

26

appointments and expressed difficulty trusting her medical providers (T. 987-89, 993),
it is well-established that attendance at medical appointments and cooperation with
medical providers are not particularly indicative of an individual's ability to work on a
full-time basis.  *See Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. September 6, 2022)
(" . . . relying on attendance at medical appointments is unhelpful in determining
whether an individual with significant psychiatric issues can consistently show up and
successfully function in a work environment."); *Flynn v. Comm'r of Soc. Sec. Adm.*,
729 F. App'x 119, 120 (2d Cir. 2018) (finding ALJ improperly substituted his lay
expertise when he discounted treating source opinions due to treatment notes showing
plaintiff appeared "well-groomed" with a "calm affect" at medical appointments);
*Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *7
("the fact that Plaintiff was generally cooperative during medical appointments . . .
does not, without more, undermine the treating sources' belief that Plaintiff's pain and
phobias would prevent her from sustaining appropriate attention, attendance, and
behavior if subjected to the stress demands of work activity.").

The ALJ further erred in his heavy reliance on plaintiff's daily and regular
activities in the RFC assessment to discount the restrictions in the treating source
opinions.  The ALJ cited plaintiff's reports that she "could perform cleaning, laundry
and shopping," drove, mowed the lawn, "socialized at the job training center," took a
vacation with family, and "liked to train her dog once per week." (T. 94, 437, 987).
This analysis "is particularly problematic given that courts have consistently warned
against placing the level of emphasis on daily activities that the ALJ appears to have

27

done here." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) (collecting cases).  In general, such activities form "a very weak basis" for discounting or rejecting a treating source opinion, and the ALJ's cursory analysis of plaintiff's activities fails to overcome that obstacle.  *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. February 22, 2018).  If an ALJ is going to rely on such activities, he must explain how their performance undermined the more restrictive treating source opinions.  *Miller v. Colvin*, 122 F.Supp.3d 23, 29 (W.D.N.Y. 2015) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated into the ability to perform substantial gainful work in a typical competitive workplace environment, where treating psychiatrist opined that plaintiff was seriously limited in his ability to follow work rules, relate to co-workers, use judgment, deal with work stresses, maintain attention and concentration, and interact appropriately with supervisors).  The ALJ's decision contains no such explanation.

Perhaps most crucially, the ALJ failed to adequately consider the supportability and consistency of the multiple treating source opinions because he considered them in a vacuum and "failed to adequately account for the consistency of the treating opinions *with each other.*"  *Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *8 (S.D.N.Y. March 8, 2022) (emphasis in original) (". . . in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of

sustained work activity."); *see also Gary F. v. Comm'r of Soc. Sec.*, 2022 WL
16540354, at *3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not
even acknowledge the substantial similarities between" two treating source opinions;
*Kathleen K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1160, 2022 WL 999686, at *6
(W.D.N.Y. April 4, 2022) (finding remandable error where ALJ considered each
psychiatric opinion in isolation and failed to adequately account for the consistency of
the treating source opinions with each other); *Darla W. v. Comm'r of Soc. Sec.*, No.
5:20-CV-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The
consistency factor does not measure whether a medical opinion is consistent with a
single other medical opinion – it measures whether the medical opinion is consistent
with *all* medical and nonmedical evidence in a claim.") (emphasis in the original).

"Even though ALJs are no longer directed to afford controlling weight to treating
source opinions – no matter how well supported and consistent with the record they
may be – the regulations still recognize the 'foundational nature' of the observations of
treating sources, and 'consistency with those observations is a factor in determining the
value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No.
2:19-CV-113, 2020 WL 3969879, at *6 (D. Vermont July 14, 2020) (quoting *Barrett v.
Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)), *see also Jacqueline L. v. Comm'r of Soc.
Sec.*, No. 6:19-CV-6786, 2021 WL 243099, at *4 (W.D.N.Y. January 26, 2021). In this
case, the ALJ failed to demonstrate the requisite "appreciation" of the treating source
relationship consistent with the amended regulations. *See Jeremy B. v. Comm'r of Soc.
Sec.*, No. 8-20-CV-818 (TWD), 2022 WL 798056, at *8 (N.D.N.Y. March 16, 2022).

Therefore, this court recommends remand for further administrative proceedings.[5]

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: 12/22/2022

Andrew T. Baxter
U.S. Magistrate Judge

---

[5] "When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).